Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ALUMA CONSTRUCTION CORPORATION<br><br>Recurrida<br><br>v.<br><br>MUNICIPIO DE VIEQUES<br><br>Peticionario | KLCE202400005 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Vieques<br><br>Caso Núm.:<br>N2CI201400055<br><br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Comparece ante nos el Municipio de Vieques (Municipio o parte peticionaria) mediante *Petición de Certiorari* y solicita que revoquemos la *Resolución*[1] emitida el 4 de octubre de 2023, notificada el 6 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Vieques (TPI o foro primario). Mediante el referido dictamen, el TPI determinó que el Municipio está obligado al pago de la Sentencia sin acogerse a lo dispuesto en el Artículo 8 de la Ley Núm. 66-2014, *infra,* por estar expresamente excluido de su aplicación.

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *Certiorari* y **revocamos** la *Resolución* recurrida.

## I.

Según surge del expediente ante nuestra consideración, el 23 de junio de 2014, Aluma Construction Corporation (Aluma o parte recurrida) instó una *Demanda*[2] sobre cobro de dinero en contra del

---

[1] Apéndice del recurso, págs. 210-214.
[2] Apéndice del recurso, págs. 1-6.

Número Identificador
SEN2024_____

Municipio. En esta, alegó que el Municipio le adeudaba la suma de $576,898.20, más los intereses legales correspondientes, por concepto de unas obras realizadas y no pagadas durante los diez (10) años precedentes a la *Demanda*.

Luego de los trámites de rigor, el 15 y 16 de junio de 2017 se celebró el juicio. Posteriormente, el 22 de noviembre de 2017, las partes presentaron un *Acuerdo de Transacción* en el que informaron al Tribunal haber llegado al siguiente acuerdo:

> 1. La cantidad total de la transacción, incluyendo intereses hasta el día de su firma es de $450,000.00 dólares, a ser pagados por el Municipio de Vieques a Aluma Construction Corporation.
>
> 2. Los términos de pago son 10% del total a ser pagado en 30 días después de ser firme la Sentencia.
>
> 3. La cantidad restante se dividirá en tres pagos iguales a ser estos pagados al final de un año, el primero. Al final de dos años, el segundo. Y al final de dos años el tercero, a partir de que sea final y firme la Sentencia.
>
> [...][3].

Consecuentemente, el 28 de noviembre de 2017, notificada el 5 de diciembre de 2017, el foro primario dictó *Sentencia*, en la que acogió el *Acuerdo de Transacción* sometido por las partes[4].

Tras varias incidencias procesales, el 1 de agosto de 2018, Aluma presentó una *Solicitud de Orden*[5] para hacer efectiva la *Sentencia*. Con relación a la anterior, el 24 de agosto de 2018, el TPI determinó que la parte recurrida debía utilizar los mecanismos disponibles en la Regla 51 de Procedimiento Civil[6] para ejecutar la *Sentencia*. El 4 de septiembre de 2018, la parte recurrida presentó *Moción a Tenor con la Regla 51.3 de Procedimiento Civil y/o Solicitud de Reconsideración*[7], en la cual reiteró su solicitud de que se ordenara al Municipio el cumplimiento con lo estipulado en la

---

[3] Apéndice del recurso, págs. 10-11.
[4] Apéndice del recurso, págs. 7-9.
[5] Apéndice del recurso, págs. 12-13.
[6] 32 LPRA Ap. V, R. 51.
[7] Apéndice del recurso, págs. 14-16.

*Sentencia.* El 11 de enero de 2019, el TPI emitió y notificó una *Orden*[8] en la que declaró *No Ha Lugar* la moción presentada.

Por su parte, el 28 de enero de 2019, el Municipio presentó *Moción Consignación Pago Parcial de Sentencia Según Estipulado*[9], mediante la cual informó haber consignado a favor del Secretario del Tribunal el pago de $45,000.00 correspondiente al 10% de la *Sentencia.*

El 6 de mayo de 2019, Aluma presentó *Solicitud de Embargo de Bienes Muebles en Ejecución de Sentencia*[10]. En su escrito, solicitó al foro primario que emitiera una orden para embargar bienes muebles del Municipio hasta satisfacer la suma adeudada de $135,000.00 dólares, correspondiente al plazo vencido luego del primer año. El 23 de agosto de 2019, el TPI emitió y notificó una *Orden* en la que concedió un término al Municipio para expresarse. A tales efectos, el 16 de septiembre de 2019, el Municipio se opuso a la solicitud de embargo mediante *Moción en Cumplimiento de Orden*[11] por entender que la solicitud de embargo es contraria al Artículo 29 de la Ley Núm. 66-2014, según enmendada, conocida como *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*[12] (Ley Núm. 66-2014). El 21 de octubre de 2019, Aluma presentó *Réplica a Moción en Cumplimiento de Orden y Solicitud de Reconsideración*[13] en la que reiteró su solicitud de embargo.

Posteriormente, el 13 de enero de 2020, Aluma presentó *Moción Solicitando Orden* en la que argumentó sobre la procedencia de la orden de embargo contra activos del Municipio por la cantidad

---

[8] Apéndice del recurso, págs. 17-18.
[9] Apéndice del recurso, págs. 19-21. El 8 de febrero de 2019, el TPI emitió y notificó una *Orden* en la que declaró *Con Lugar* la consignación de fondos.
[10] Apéndice del recurso, págs. 24-25.
[11] Apéndice del recurso, págs. 28-29.
[12] 3 LPRA sec. 9141.
[13] Apéndice del recurso, págs. 30-32.

de $405,000.00, más el interés legal correspondiente[14]. Seguido de esta moción, presentó varias mociones adicionales reiterando su solicitud[15].

El 20 de mayo de 2020, el Municipio presentó una *Réplica al Demandante*[16], en la que informó la imposibilidad del Municipio de realizar los pagos correspondientes por no contar con los fondos suficientes para pagar.

Así las cosas, el 11 de junio de 2020, notificada el 26 de junio de 2020, el TPI dictó *Orden*[17] con relación a la *Moción Solicitando Orden* presentada por Aluma. En esta, dispuso lo siguiente:

> No ha lugar de conformidad con el Art. 29 de la Ley Núm. 66 del 17 de junio de 2014, según enmendada, conocida como "Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico".

En desacuerdo con la determinación, el 7 de julio de 2020, Aluma presentó una *Moción Solicitando Reconsideración*[18]. En síntesis, adujo que la Ley Núm. 66-2014, *supra*, dispone que si los fondos del municipio resultaran insuficientes para hacer pago alguno respecto a una sentencia o plan de pago previamente autorizado, ello debe certificarse. Por tanto, solicitó que se ordenara al Municipio proveer una certificación que especifique la utilización de los fondos presupuestados. Por su parte, el 14 de julio de 2020, el Municipio presentó *Moción en Oposic[i]ón a Reconsideración*[19], en la que sostuvo que la referida Ley prohíbe el embargo de fondos públicos para hacer efectivo un fallo emitido contra el Estado. Además, añadió que varias crisis presupuestarias posteriores al *Acuerdo de Transacción* le han imposibilitado cumplir con la *Sentencia*, pero señaló que los plazos vencidos de la deuda se habían incluido en los presupuestos de los años siguientes.

---

[14] Apéndice del recurso, pág. 35.
[15] Apéndice del recurso, págs. 36-46.
[16] Apéndice del recurso, págs. 47-48.
[17] Apéndice del recurso, págs. 49-50.
[18] Apéndice del recurso, págs. 53-56.
[19] Apéndice del recurso, págs. 57-58.

Tras varias mociones presentadas por las partes sobre el mismo asunto, el 23 de septiembre de 2020, notificada el 6 de octubre de 2020, el TPI emitió *Resolución*[20] en la que dispuso lo siguiente respecto a la *Moción Solicitando Reconsideración* presentada el 7 de julio de 2020:

> 1. Se ordena al Municipio de Vieques acreditar haber incluido en el presupuesto para el Año fiscal 2020-2021 el pago de $135,000.0[0] adeudado a la demandante. Tenga veinte (20) días para ello.
>
> 2. Deberá, además, conforme al Art. 29 de la Ley Núm. 66 del 17 de junio de 2014, acreditar, mediante las certificaciones correspondientes la falta de fondos para realizar dichos pagos, para los años 2017, 2018, 2019. El resto de lo solicitado en la moción se declara No Ha Lugar.

El 19 de octubre de 2020, el Municipio presentó *Moción en Cumplimiento de Orden*[21], la cual acompañó con los siguientes documentos: (1) certificación del Sr. Emir T. Mercado Martínez, director de Finanzas del Municipio de Vieques en la que indicó haber incluido la cantidad de $270,000.00 en el presupuesto para el Año Fiscal 2020-2021; (2) certificación de que el Municipio no contó con fondos disponibles para el pago de la deuda en los años 2017, 2018 y 2019; y (3) certificación, fechada el 13 de octubre de 2020, en la que señala que el Municipio no cuenta con fondos para pagar la deuda.

El 27 de octubre de 2020, Aluma presentó un escrito intitulado *Solicitud de Remedios en Consideración de Certificaciones del Municipio*. En este, cuestionó que el Municipio no incluyera en el presupuesto de 2020-2021 la suma de $135,000.00 correspondiente a ese año fiscal más los $270,000.00 adeudados de los años anteriores; la ausencia de un documento de contabilidad; y, por último, la falta de evidencia sobre el cumplimiento de los procedimientos requeridos por ley para alterar el presupuesto y el uso de fondos. Así, solicitó, entre otras cosas, que se emitiera una

---

[20] Apéndice del recurso, págs. 66-68.
[21] Apéndice del recurso, págs. 75-79.

Orden a la parte peticionaria para que sometiera un presupuesto modificado con la cuantía de $405,000.00[22].

El 17 de mayo de 2021, el Municipio presentó *Moción en Cumplimiento de Orden y Sometiendo Certificación de Presupuesto del Municipio de Vieques 2021-2022*[23], en la que certificó, a través de la directora de la Oficina de Finanzas del Municipio, que para el presupuesto del año 2021-2022 se incluyó la cantidad de $135,000.00 y detalló que la suma adeudada a Aluma ascendía a $551,810.81. Luego, el 21 de mayo de 2021, el Municipio presentó una moción enmendada a los fines de corregir que la suma adeudada a la parte recurrida era $405,000.00[24].

En respuesta, el 25 y 27 de mayo de 2021, Aluma presentó *Moción Informativa* y *Moción Solicitando Orden*, respectivamente, mediante las cuales objetó la certificación enmendada del presupuesto para el año 2021-2022. Sostuvo que solo se incluyó el pago de la cantidad de $135,000.00, cuando aún no se han pagado los $270,000.00 presupuestados para el año fiscal 2020-2021. Por tanto, solicitó que se ordenara el pago de los $405,000.00, so pena de desacato.

Posteriormente, el 15 de julio de 2021, el Municipio presentó una *Moción informativa sobre Pago*[25], en la cual hizo constar que en esa misma fecha remitió a Aluma un pago por la cantidad de $20,000.00 con el propósito de abonar a la deuda.

Luego de varios trámites procesales, el 1 de junio de 2022, Aluma presentó *Moción Solicitando Orden*. Adujo que, dadas las circunstancias del caso, procedía ordenar al Municipio al pago total de la *Sentencia*[26].

---

[22] Apéndice del recurso, págs. 80-81.
[23] Apéndice del recurso, págs. 86-87.
[24] Apéndice del recurso, págs. 88-90.
[25] Apéndice del recurso, págs. 100-101.
[26] Apéndice del recurso, págs. 102-106.

Consecuentemente, el 21 de junio de 2022, el TPI emitió y notificó una *Orden* en la que concedió al Municipio un término de treinta (30) días para "presentar un plan detallado de los pagos pendientes y las fechas específicas para la realización de los pagos, so pena de sanciones"[27].

El 21 de noviembre de 2022, el Municipio compareció mediante escrito en *Oposición a Moción Reiterando Solicitud de Sanciones y Solicitud de Término Adicional para Cumplir con Orden del 26 de septiembre de 2022*, en el que argumentó que cualquier alternativa para satisfacer la *Sentencia* del caso de autos debía enmarcarse en los parámetros de la Ley Núm. 66-2014, *supra*; la Ley Núm. 3-2017, según enmendada, conocida como *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico* (Ley Núm. 3-2017); y, la Carta Circular Núm. 2020-07 del Departamento de Justicia sobre *Normas a Seguir para los Planes de Pago Propuestos* (Carta Circular Núm. 2020-07). Particularmente, alegó que no procede ordenar el pago total de la *Sentencia* por haberse incumplido con el plan de pago. Asimismo, indicó que no procede el embargo de fondos municipales, y el único remedio que tiene un acreedor es el pago de intereses sobre la cuantía adeudada. Por último, sostuvo que el pago será aplazado para el próximo año fiscal, teniendo el efecto de extenderse automáticamente[28].

El 29 de noviembre de 2022, notificada el 16 de diciembre de 2022, el TPI emitió una *Orden* en la que dispuso que concedió al Municipio un término final y perentorio de veinte (20) días para que cumpliera con la *Orden* del 21 de junio de 2022[29].

---

[27] Apéndice del recurso, págs. 107-108. Inicialmente, la *Orden* requería la presentación del plan detallado y fechas de pago a la parte demandante. No obstante, el 28 de junio de 2022, el TPI aclaró que la misma era dirigida a la parte demandada.
[28] Apéndice del recurso, págs. 131-133.
[29] Apéndice del recurso, págs. 134-135.

Luego, el 9 de enero de 2023, Aluma presentó una *Moción de Ejecución Renovada* en la que reiteró su interés de que se embarguen las propiedades gubernamentales, pero excluyendo los fondos de operación del Municipio. Además, solicitó que se ordenara el nombramiento de un síndico que tome control de los fondos del Municipio, de modo que se dé cumplimiento a la *Sentencia*[30].

El 13 de febrero de 2023, el Municipio presentó una *Moción en Cumplimiento de Orden[31]*, en la cual reiteró la aplicación de la Ley Núm. 66-2014, *supra*, y la Carta Circular Núm. 2020-07. Además, informó el interés de someter una extensión del plan de pago para aprobación del Secretario del Departamento de Justicia, de conformidad con el Artículo 28 de la Ley Núm. 66-2014, *supra.* Ante ello, el Municipio solicitó un término de veinte (20) días para formular el plan de pago y presentar evidencia de este.

El 21 de febrero de 2023, el TPI emitió *Orden*[32] en la que se dio por enterado sobre la *Moción en Cumplimiento de Orden* presentada por el Municipio y concedió el término de veinte (20) días solicitado en la moción.

En esta misma fecha, Aluma compareció mediante *Moción en Oposición a Segundo Plan de Pago*[33]. En esencia, arguyó que, por existir un plan de pago acogido mediante *Sentencia*, el Artículo 28 de la Ley Núm. 66-2014, *supra*, no aplica al presente caso debido a que este dispone que no aplicará en casos donde "*exista un plan de pagos previamente acordado por escrito y aprobado por el Tribunal*". También, adujo que el Municipio no puede realizar modificaciones al presupuesto que afecten adversamente las obligaciones de pago.

Más adelante, el 6 de marzo de 2023, el Municipio presentó una *Moción de Prórroga con Relación a Trámite para Extensión del*

---

[30] Apéndice del recurso, págs. 136-139.
[31] Apéndice del recurso, págs. 143-148.
[32] Apéndice del recurso, págs. 149-151.
[33] Apéndice del recurso, págs. 155-157.

*Plan de Pago*[34], en la que solicitó hasta el 15 de marzo de 2023 para presentar evidencia del trámite de la extensión del plan de pago. En esta misma fecha, el Municipio presentó *Réplica a Moción en Oposición a Segundo Plan de Pago*, en la cual sostuvo que la Ley Núm. 66-2014, *supra*, era aplicable al *Acuerdo de Transacción* en controversia por haberse acordado durante la vigencia de la referida Ley.

Por su parte, el 21 de marzo de 2023, Aluma presentó *Moción*[35] en la que refirieron al foro primario a su *Moción en Oposición a Segundo Plan de Pago*. Además, argumentó que toda gestión que pueda realizar el Municipio para obtener los fondos necesarios para cumplir con la sentencia debe llevarse a cabo simultáneamente se adelantan otros recursos para hacer efectiva la *Sentencia*.

El 23 de marzo de 2023, el Municipio presentó una *Moción Informativa y Extensión de Tiempo* en la que nuevamente solicitó prórroga para presentar el plan de pago[36].

Tras varias mociones en las que las partes reiteraron sus argumentos previamente expuestos, el 24 de abril de 2023, el Municipio compareció mediante *Moción en Cumplimiento de Orden en Torno a Plan de Pago*[37], la cual acompañó con una Certificación suscrita por el alcalde y la directora de la Oficina de Finanzas del Municipio, en la cual se hace constar que el Municipio no cuenta con fondos suficientes para satisfacer la *Sentencia* en el año fiscal 2022-2023. Asimismo, el Municipio propuso modificar y extender el plan de pago por tres (3) años fiscales adicionales.

---

[34] Apéndice del recurso, págs. 160-161.
[35] Apéndice del recurso, págs. 173-174.
[36] Apéndice del recurso, págs. 170-172.
[37] Apéndice del recurso, págs. 190-193.

El 27 de junio de 2023, notificada el 13 de julio de 2023, el TPI emitió una *Orden* en la que señaló vista para el 22 de septiembre de 2023.

Así las cosas, el 4 de octubre de 2023, notificada el 6 de octubre de 2023, el TPI emitió la *Resolución*[38] recurrida. En esta, determinó que la *Sentencia* dictada en el presente caso está excluida de la aplicación del Artículo 28 de la Ley Núm. 66-2014, *supra*, por tratarse de una sentencia que incluye un plan de pago previamente acordado y aprobado por el Tribunal. Asimismo, estableció que el nuevo plan de pago propuesto por el Municipio excede el término dispuesto en el mencionado Artículo 28 de la Ley Núm. 66-2014, *supra*. Por tanto, concluyó que el Municipio está obligado al pago de la *Sentencia*.

Insatisfecho, el 23 de octubre de 2023, el Municipio presentó una *Moción de Reconsideración*[39]. El 30 de octubre de 2023, Aluma presentó su *Oposición a Moción de Reconsideración*[40]. El 30 de octubre de 2023, notificada al día siguiente, el TPI emitió *Resolución*[41] en la que declaró *No Ha Lugar* la moción de reconsideración.

Aún en desacuerdo, el 2 de enero de 2024, el Municipio presentó ante nos el recurso de epígrafe, en el que le imputó al TPI la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al decretar que no era de aplicabilidad la Ley Núm. 66-2014 a la Sentencia dictada en este caso.

Al día siguiente, el Municipio presentó una *Moción en Auxilio de Jurisdicción* a los fines de que se paralizaran los procedimientos ante el foro primario. El 4 de enero de 2024 se emitió y notificó

---

[38] Apéndice del recurso, págs. 210-214.
[39] Apéndice del recurso, págs. 215-218.
[40] Apéndice del recurso, págs. 219-231.
[41] Apéndice del recurso, págs. 232-234.

*Resolución* mediante la cual declaramos *No Ha Lugar* al auxilio de jurisdicción.

El 22 de enero de 2024, Aluma compareció mediante *Alegato del Recurrido*. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[42]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[43]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[44]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[45].

La Regla 40 del Reglamento del Tribunal de Apelaciones[46], establece los criterios que este foro debe tomar en consideración al entender o no en los méritos los asuntos planteados mediante un recurso de *certiorari.* La aludida regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[42] Véase *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).
[43] *Íd.*
[44] *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2014); *Negrón v. Srio. De Justicia, supra*, pág. 91.
[45] *Íd.*
[46] 4 LPRA XXII-B, R. 40.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

En lo pertinente a este caso, el *certiorari* también es el recurso apropiado para solicitar la revisión de determinaciones postsentencia[47]. A esos efectos, el Tribunal Supremo expresó que:

> Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia[48].

**-B-**

La Ley Núm. 66-2014, *supra*, se aprobó a los fines de adoptar un plan para manejar las consecuencias de la crisis fiscal y económica, de la degradación del crédito de Puerto Rico y "establecer medidas de reducción de gastos de la Rama Ejecutiva tales como [...], normas y restricciones sobre concesión de aumentos en beneficios económicos o compensación monetaria extraordinaria, disposiciones sobre negociación de convenios colectivos y foros para dirimir controversias". Con este estatuto se persigue permitirle al

---

[47] *IG Builders et al. v. BBVAPR, supra,* pág. 339.
[48] *Íd.*

gobierno "contar con liquidez suficiente para poder pagar su nómina y sufragar servicios esenciales, mediante la implementación de medidas de reducción de gastos y estabilización fiscal"[49].

En esta ley, se declaró un "estado de emergencia para la recuperación fiscal y económica", y se adoptó "un plan para manejar las consecuencias de la misma y establecer una gerencia estructurada que permita cumplir con los compromisos del País" así como la continuación del ofrecimiento de los servicios necesarios para la ciudadanía[50]. Aprobada en el ejercicio del poder de razón del Estado y en virtud de las facultades constitucionales de la Asamblea Legislativa, esta ley especial tiene "*primacía sobre cualquier otra ley*"[51]. Sus disposiciones aplican a todas las entidades que componen la Rama Ejecutiva, lo que incluye todas sus agencias, instrumentalidades y corporaciones públicas[52].

El Capítulo IV de la Ley Núm. 66-2014, *supra,* establece el procedimiento para establecer planes de pago respecto a las sentencias finales y firmes que recaigan sobre el ELA y sus instrumentalidades, las corporaciones públicas y los municipios. Al respecto, el Artículo 28 del estatuto dispone:

> Artículo 28.-Aplicabilidad y planes de pago.
>
> Ante el impacto negativo a la estabilidad fiscal y operacional del Estado Libre Asociado de Puerto Rico, incluyendo los gobiernos municipales, que conllevaría el pago mediante una suma global, **las disposiciones de este Capítulo serán aplicables a todas las sentencias finales y firmes**, con excepción de las relacionadas con expropiaciones, **que a la fecha de la aprobación de esta Ley se encuentren pendientes de pago**, **así como a las que durante el transcurso de la vigencia de esta Ley se emitan**, donde las agencias, instrumentalidades, corporaciones públicas, los municipios o el Estado Libre Asociado de Puerto Rico estén en la obligación de efectuar un desembolso de fondos con cargo al Fondo General, el fondo de la corporación pública

---

[49] *AAA v. UIA*, 200 DPR 903, 921 (2018); Véase, Exposición de Motivos de la Ley Núm. 66-2014, *supra.*
[50] 3 LPRA sec. 9101.
[51] 3 LPRA sec. 9102.
[52] 3 LPRA sec. 9111.

que se trate, o con cargo al presupuesto municipal, según fuera el caso.

En aquellos casos donde las agencias, instrumentalidades, corporaciones públicas, los municipios o el Estado Libre Asociado de Puerto Rico, o funcionarios acogidos a los beneficios de esta Ley, estén en la obligación de efectuar un desembolso de fondos con cargo al Fondo General, al fondo de la corporación pública que se trate o con cargo al presupuesto municipal, según fuera el caso, y no exista un plan de pagos previamente acordado por escrito y aprobado por el Tribunal, se aplicarán las disposiciones contenidas en este Artículo. Ello con independencia de la naturaleza del fallo, o si se tratare de una transacción administrativa, extrajudicial o judicial. **El Secretario de Justicia evaluará el plan de pago aplicable conforme a la cuantía de la sentencia**, luego de lo cual solicitará una certificación de disponibilidad de fondos al Director de la Oficina de Gerencia y Presupuesto, la Junta de Gobierno o cuerpo rector de la corporación pública que se trate, o del Alcalde para el municipio correspondiente. Para efectos únicos de la aplicación de este Artículo el término Estado incluirá el Estado Libre Asociado de Puerto Rico, las agencias e instrumentalidades, corporaciones públicas y los municipios. **Los planes de pago serán realizados conforme a los siguientes términos:**

[…]

(b) Si la cantidad adeudada por el Estado, corporación pública o por un municipio fuere mayor a cien mil (100,000.00) dólares, pero menor a un millón (1,000,000.00) de dólares, podrá ser satisfecha mediante un plan de pago que comprenderá entre tres (3) años y un (1) día a cuatro (4) años desde que la obligación de pago advenga final y firme.

[…]

(g) **De no haber disponibilidad de fondos para honrar el plan de pagos en un año fiscal particular, este será aplazado para el próximo año fiscal, teniendo el efecto de extender automáticamente dicho plan por el número de pagos no realizados**.

[…]

(i) El Estado, la corporación pública o el municipio no realizará pago alguno a menos que el acreedor de la sentencia provea una certificación oficial emitida por la entidad pertinente, que indique la ausencia de deuda con el Departamento de Hacienda, el Centro de Recaudaciones de Ingresos Municipales y la Administración para el Sustento de Menores. […]

[…]

Los planes de pago de sentencias otorgados por virtud de este Artículo mantendrán su vigencia y disposiciones por el tiempo establecido en el plan de pago, sin que pueda

afectarse o invalidarse por haberse expirado el tiempo de la vigencia de esta Ley.[53] (Énfasis nuestro).

De otra parte, el Artículo 29 de la Ley Núm. 66-2014, *supra,* dispone lo siguiente:

> Artículo 29.-Acciones contra el Estado, Municipios y funcionarios.
>
> No se podrá compeler a las agencias o instrumentalidades del Estado, corporaciones públicas o municipios, funcionarios o empleados, a hacer pago alguno respecto a una sentencia o plan de pago previamente autorizado, cuando no existan fondos para ello por haberse agotado la asignación legislativa destinada a esos fines, por lo que se prohíbe el embargo de fondos para hacer efectivo un fallo emitido contra el Estado. La determinación de falta de fondos para realizar dicho pago deberá ser certificada por la agencia o instrumentalidades del Estado, corporación pública o municipio que se trate, y en caso de fondos que provengan de asignaciones legislativas, incluyendo del Fondo General, deberá ser confirmada por la Oficina de Gerencia y Presupuesto, cuya determinación al respecto será concluyente.
>
> **El remedio disponible cuando no existan fondos para el pago de sentencias será el pago de interés sobre la cantidad adeudada** conforme a lo establecido en las Reglas de Procedimiento Civil y las leyes especiales aplicables.
>
> **Lo dispuesto en este Artículo también le será aplicable a los Municipios.[54]** (Énfasis nuestro).

Por otro lado, conforme a la Ley Núm. 205-2004, según enmendada, conocida como *Ley Orgánica del Departamento de Justicia*[55] (Ley Núm. 205-2004), la Ley Núm. 66-2014, *supra,* y la Ley Núm. 3-2017, *supra,* se aprobó la Carta Circular Núm. 2020-07 del Departamento de Justicia sobre *Normas a Seguir para los Planes de Pago Propuestos* (Carta Circular Núm. 2020-07), vigente desde el 18 de diciembre de 2020. La misma tiene el propósito de establecer las guías, normas y términos que regirán la elaboración y redacción de los planes de pago que deberán ser cumplidos por las entidades gubernamentales del Gobierno de Puerto Rico y los municipios en aquellos casos en que se emitan en su contra sentencias finales y firmes[56].

---

[53] 3 LPRA sec. 9141.
[54] 3 LPRA sec. 9142.
[55] 3 LPRA sec. 291, *et seq.*
[56] Carta Circular Núm. 2020-07, pág. 3.

**III.**

En el presente recurso, el Municipio señala que incidió el foro primario al determinar que no era de aplicabilidad la Ley Núm. 66-2014, *supra*, a la *Sentencia* dictada el 28 de noviembre de 2017, notificada el 5 de diciembre de 2017, por tratarse de una sentencia que incluye un plan de pago previamente acordado por escrito y aprobado por el Tribunal.

Según se desprende del legajo apelativo, el 28 de noviembre de 2017, notificada el 5 de diciembre de 2017, el foro primario dictó *Sentencia*, en la que acogió el *Acuerdo de Transacción* sometido por las partes, el cual disponía para el pago de la suma de $450,000.00 por parte del Municipio a Aluma. De dicho total, el Municipio tenía la obligación de pagar el 10% en el término de treinta (30) días después de la *Sentencia* advenir final y firme y el restante adeudado dividido en tres (3) pagos iguales. Ante ello, el 28 de enero de 2019, el Municipio emitió un pago por la suma de $45,000.00, correspondiente al 10% de la *Sentencia,* y el 15 de julio de 2021 realizó un pago por la cantidad de $20,000.00. No obstante, eventualmente alegó, en varias instancias, que debido a la crisis presupuestaria que enfrenta, no cuenta con los fondos suficientes para satisfacer la *Sentencia.*

Por lo anterior, **el Municipio propuso modificar y extender el plan de pago conforme a las disposiciones reconocidas en la Ley Núm. 66-2014, *supra*, y la Carta Circular Núm. 2020-07**. Incluso, el Municipio informó tener interés en someter una extensión del plan de pago para aprobación del Secretario del Departamento de Justicia[57]. Sin embargo, del expediente apelativo no se desprende gestión alguna al respecto.

---

[57] En cuanto al plan de pago, el inciso b del Artículo 28 de la Ley 66-2014, *supra*, establece que:

> El Secretario de Justicia evaluará el plan de pago aplicable conforme a la cuantía de la sentencia, luego de lo cual solicitará una certificación de disponibilidad de fondos al Director de la

Conforme a la normativa precitada, si un municipio confronta dificultades económicas para cumplir con su obligación, la Ley Núm. 66-2014, *supra,* provee un mecanismo oportuno para atender esa circunstancia. Particularmente, el inciso g del Artículo 28 reconoce que cuando un municipio no tiene fondos suficientes en su presupuesto para cumplir con el plan de pago durante un año fiscal particular, tal pago deberá aplazarse para el próximo año fiscal, lo que provocará que los pagos subsiguientes se extiendan automáticamente por la cantidad de pagos que no se hayan realizado. A pesar de, advertimos que tal remedio no prescinde de la obligación y responsabilidad del municipio de cumplir con el dictamen judicial y pagar lo adeudado a la otra parte. Resaltamos que lo dispuesto en el inciso g únicamente prorroga los términos para cumplir con la obligación de liquidación de lo adeudado, pero la responsabilidad del municipio subsiste y deberá ser satisfecha en su totalidad, según pactado, aunque quede sujeta a los plazos prorrogados.

Por tanto, determinar que la *Sentencia* dictada en el caso de autos está excluida de la aplicación del Artículo 28 de la Ley 66-2014, *supra,* sería contrario al estado de derecho y, a su vez, desvirtuaría el propósito de la política pública, la cual persigue, entre otras cosas, manejar las consecuencias de la crisis fiscal y económica que enfrenta el Gobierno de Puerto Rico. Precisamente, con ello se salvaguarda la continuación de la gestión pública y se garantiza que la parte acreedora reciba su acreencia lo antes posible. En virtud de lo anterior, colegimos que erró el TPI al determinar que la *Sentencia* está excluida de la aplicación de la normativa antes mencionada.

---

Oficina de Gerencia y Presupuesto, la Junta de Gobierno o cuerpo rector de la corporacion pública que trate, o del alcalde para el municipio correspondiente. 3 LPRA sec. 9141.

No obstante, destacamos que habiendo transcurrido más de seis (6) años desde el acuerdo transaccional entre el Municipio y Aluma, cinco (5) años desde la solicitud del Municipio al TPI sobre la aplicabilidad de la Ley Núm. 66-2014, *supra,* y tres (3) años desde que se emitió la Carta Circular Núm. 2020-07, el Municipio ha demostrado falta de interés y escasa diligencia en completar el trámite instituido en la Ley Núm. 66-2014, *supra*, y la Carta Circular Núm. 2020-07.

Por tanto, ordenamos al Municipio remitir al Departamento de Justicia su solicitud para evaluación y aprobación del plan de pago en un plazo de cinco (5) días, contados a partir de la notificación de la presente *Sentencia*. El Municipio deberá notificar al TPI y a la parte recurrida del trámite realizado ante el Departamento de Justicia, así como de cualquier otra incidencia relacionada. Ante cualquier desvío a esta orden podrá el foro primario imponer las sanciones económicas progresivas que entienda necesarias para el cumplimiento con la Ley Núm. 66-2014, *supra*, y la Carta Circular Núm. 2020-07.

Exhortamos al Municipio a actuar diligentemente para el pronto cumplimiento de su obligación, y a no incurrir en abuso del derecho ni de los procedimientos judiciales.

**IV.**

Por los fundamentos que anteceden, **expedimos** el auto de *certiorari* y **revocamos** la *Resolución* recurrida. Al amparo de la **Regla 35 (A)(1) de nuestro Reglamento**[58], el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.

---

[58] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B, R. 35.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda. Lilia M. Oquendo Solís
                         Secretaria del Tribunal de Apelaciones